**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

PATRICIA ANN TABB                                                                                    PLAINTIFF

v.                                            NO. 5:06CV00316 JLH

CHARLES ALLEN, *et al.*                                                                        DEFENDANTS

**OPINION AND ORDER**

Patricia Tabb commenced this action against Charles Allen, William Byers, and Eddie Rinchuso, individually and in their official capacities with the Arkansas Department of Correction School System, and against the members of the Arkansas Correction School Board. Tabb alleges race and sex discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. §§ 1981, 1983, and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-107 *et seq*. The court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state claims under 28 U.S.C. § 1367. The defendants have moved for summary judgment, which Tabb opposes. For the reasons that will be explained, the motion for summary judgment is granted.

**I.**

The Arkansas Correctional School District provides elementary, secondary, and vocational technical education to individuals incarcerated in Department of Correction facilities. There are seven schools in the school system: East Arkansas, North Central, Grimes, McPherson, Wrightsville, Cummins, Varner, Delta, Ouachita, Pine Bluff, and Tucker. The school district's central office is located at Pine Bluff. Patricia Tabb, a black female, started teaching in the district in the 1991-1992 school year. She worked as a teacher in the district for the following seven years. Tabb was promoted to principal of the Delta Regional Unit in January 1999 and remains employed in that

position. Dr. William Byers, a white male, is the superintendent of the district. He has been in the position of superintendent since 2005, and had been the deputy superintendent for ten years before that. Dr. Charles Allen, a white male, is chief administrative officer of the district, and Mr. Eddie Rinchuso, also a white male, is deputy superintendent of finance.

Tabb admits that since she was promoted to be principal of the Delta Regional Unit in 1999, she has not applied for any other positions in the school system or spoken with Dr. Byers about her interest in being promoted further. Tabb indicated in her deposition that she showed interest in a promotion by enrolling in the Master Principal Program. Overall, Tabb has received favorable performance evaluations since she began working for the district. When Dr. William Glover, a white male, was promoted to supervising principal in 2005, the position was not advertised. Tabb insists that she was fully qualified to be supervising principal, and that if the position had been posted, she would have talked to Dr. Byers about her interest in it. Tabb also says that there were two other vacancies, those of assistant superintendent and superintendent, that were vacant and not advertised as promotion opportunities. Dr. Glover is currently the assistant superintendent of the district. Dr. Glover has over thirty years experience in correctional education. He began teaching in the district at the Cummins Unit in October 1976. He served as principal of several of the units in the district from August 1990 until July 2005, when he was promoted to the position of supervising principal. He holds a doctorate in education from the University of Arkansas at Little Rock and has district-level certification with the state of Arkansas.

In his deposition, Dr. Allen explained that over the years that he has worked in the school district, he has not necessarily advertised for all open positions, particularly if he knew someone in the district to be particularly qualified for the position. He says that this was how Tabb was initially

promoted to principal, *i.e.*, that she indicated that she wanted to be an administrator and he felt she was best suited for the position, so he promoted her. Tabb does not dispute this account in her response.

It is undisputed that all upper level administrative positions have been held by white individuals since the inception of the school district in 1973. The school district has had an equal employment opportunity policy in place since April 2001.

Tabb claims that she has been denied mileage reimbursement for 3428 miles in 2003-2004, 4612 miles in 2004-2005, and 4928 miles in 2005-2006. Tabb lives in Monticello, the Delta Regional Unit is located in Dermott, and she says that she frequently is required to drive either to the central office in Pine Bluff for meetings or to different school sites because she also serves as a GED examiner. The Delta Unit is 72 miles from the central office in Pine Bluff. Tabb says that Dr. Allen told her shortly after she was promoted that she would not be reimbursed for mileage in connection with her travel when her car was used, but that she would have access to a state-owned vehicle at the central office in Pine Bluff. Allen denies that he told her she would not be reimbursed for using her personal vehicle. Tabb also asserts that Rinchuso knew she was not being reimbursed for mileage when she traveled from 1999 to 2006, which Rinchuso admitted in his deposition.

The school district's travel expenses policy reads as follows:

> The Board of Education authorizes the reimbursement of professional personnel for travel expenses incurred as a requirement of their jobs. Reimbursement may be made for travel which is at the request of, or has received prior approval from, the Superintendent and said employee's immediate supervisor. Such reimbursement shall be at the rate set by the board.

Tabb submitted travel reimbursement requests for mileage twice, once in March 2006 and once in January 2007. While the defendants assert that both requests were approved and paid, it is clear that

the payment for the March 2006 request was not paid for the full amount of distance. Tabb traveled 348 miles and was only reimbursed for 138 miles (or for 3 round trips of twenty-three miles each way). Rinchuso explains that this was a mistake on his part because of a state requirement that an employee cannot make money from state travel. Tabb also suggests that Rinchuso called her on the phone after she submitted the March request and told her that she "had better not file another mileage claim." However, Tabb admits that she did not use the school district's grievance policy to complain about the partial payment of the March claim. She did send a letter complaining about the mileage reimbursement problem and lack of school vehicle on July 21, 2006, although the defendants say that she did not complain about the mileage reimbursement issue until she filed the EEOC charge in December.

Tabb's final claim of racial and sex discrimination relates to the fact that she was not assigned a state-owned vehicle for travel to various committee and principals' meetings as well as for her duties as a GED examiner. The parties agree that there is not an official vehicle assignment policy included in the school district's policies and procedures manual. Dr. Allen says that the school district began receiving a limited number of vehicles for district employees to use. He says that he decided that vehicles would be assigned based on practical considerations of use, including (1) the distance of the school from the central office in Pine Bluff; (2) the number of teachers who work at the school; and (3) the overall amount of use the particular vehicle is likely to receive from the school. Tabb disputes that those are the factors considered when the vehicle assignments have been made, but she agrees that Allen, Byers, and Rinchuso collectively determine how the vehicles are assigned.

In 1999-2000, East Arkansas and Grimes, 102 and 129 miles from the central office, respectively, each received a vehicle. At the time, the principal at East Arkansas was (and still is) a black male, and the principal at Grimes was (and still is) a white female. No specific information has been provided by the parties about vehicle assignments in 2000-2001. In 2001-2002, in addition to the assignments at Grimes and East Arkansas, North Central was assigned a vehicle. North Central is about 165 miles from the central office. At the time, there was not a principal at North Central, but the head teacher was a white male. According to Dr. Allen, North Central received a car a year later because it was not as big as the other two schools that received a car even though it was farther away. Tabb disputes this logic and says that the needs of the North Central and East Arkansas schools were the same because neither the principal at East Arkansas nor the head teacher at North Central was assigned to serve on committees.

In 2002-2003, Varner and Cummins received a school vehicle to share. Those schools are 32 and 30 miles, respectively, from the central office and they are two of the largest schools in the district. The principals of those schools were both white males. Although neither party directly addresses it, it appears from Exhibit 4[1] to the defendants' motion for summary judgment that McPherson was assigned a car in 2002-2003 as well. McPherson is approximately 130 miles from the central office, and the principal there at the time was a white male. The vehicle assignments remained the same for the 2003-2004 school year. In 2004-2005, Wrightsville, which is 39 miles from the central office, was assigned a vehicle. According to Allen, this was based on the size of the unit there, although Tabb disputes that the size of a school unit impacts the need for a vehicle.

---

[1] Exhibit 4 has been reproduced and appended to this opinion. Exhibit 4, as submitted by the defendants, did not state the race and sex of the principals. The Court has added the race and sex of the principals when there is evidence in the record stating that information.

At the time the vehicle was assigned, Fred Johnson was the principal at Wrightsville, but neither party mentions his race. During the following two years, Artie Tucker served as principal, and his race is likewise not identified.

Other than Tabb's school, Delta, the only schools that did not have a car assigned in 2004-2005 were Pine Bluff and Tucker. Tucker is 23 miles from the central office and the Pine Bluff unit is down the street. At the time, the principal at Pine Bluff was a white male, and the principal at Tucker was a black male. In 2005-2006, no new schools were assigned a vehicle. In 2006-2007, Delta, which is 72 miles from the central office, was assigned a vehicle. The parties dispute when exactly the car was assigned to Delta. The administrators say the assignment decision was made in July but that Tabb did not learn about it until August 2006. Tabb says that she had been in touch with the administrators throughout July and notes that she received the car when she started work in August after she sent a grievance letter on July 21. In 2006-2007, three other schools still were not assigned a vehicle: Pine Bluff, Tucker, and Ouachita. The principals of the schools then were a black male and two white males, respectively. Ouachita, which is about 47 miles from the central office, opened in 2004-2005 and was assigned a car in January 2007.

Tabb offers several additional facts with respect to the personnel at various units and their responsibilities which she believes are relevant to the vehicle assignment process and her assertion that she was discriminated against based on race and sex. Basically, she asserts that distance is irrelevant when compared to the committee assignments of a person assigned to a particular school. The defendants claim that the assertions are not supported by evidence and merely call into question their business judgement, but they do not specifically deny any of the facts.

Tabb has served on four committees since she was promoted to the principal position: the personnel policy committee (1999-2006), the technology committee (1999-present), the Arkansas Consolidated School Improvement Plan committee (2000-2001), and the professional development committee (2005-2006). The committees meet anywhere from two to five times a year at the central office. Tabb says that she was always required to drive her own car and says that in 2005-2006 she was the only principal on the professional development committee who did not have a state-owned car. She and Glover also did professional development for staff in June 2006 and she was required to drive herself to the central office before getting a car to use while Glover, a white male, was assigned a car. As a principal she is also required to attend monthly principals' meetings, either at the central office or another school location. She is also a GED examiner, which requires her to test inmates at Delta and at the Wrightsville Unit or the Wrightsville Boot Camp. When Tabb traveled to Wrightsville, she would drive to the central office and leave her car there and then drive a state-owned vehicle from there to Wrightsville (39 miles). She notes that she would drive from her home in Monticello to the central office, which is about 52 miles. She observes that in 2002-2003, there were at least two vehicles that were unassigned that sat in the parking lot at the central office.

Tabb says that neither the white male who served as head teacher at North Central (Mike Hill) nor the white male who served as principal at McPherson (Bobby Coleman) served on any committees, nor were they GED examiners. She points out that G.B. Davis is not a GED examiner and did not have any committee assignments in 2004-2005. He has never been assigned a car at either of his school units (Tucker, 2003-2005 and Pine Bluff, 2005-2007) and is a black male. She also mentions Jason Smith, a white male who worked at Tucker from 2001-2003, and then at Ouachita from 2005-2007. Smith was a GED examiner when he worked at Tucker and was not

7

assigned a car at that time. She and Smith were then the only two GED examiners not assigned vehicles. However, Smith was not a GED examiner nor did he have any committee assignments when he worked at Ouachita and was assigned a car.

## II.

A court should enter summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. If the moving party meets this burden, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting FED. R. CIV. P. 56(e)). A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. In deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party and draws all inferences in his favor, mindful that summary judgment seldom should be granted in discrimination cases where claims are often based on inferences. *Peterson v. Scott County*, 406 F.3d 515, 520 (8th Cir. 2005); *Bassett v.*

*City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000) (collecting cases). *But see Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir. 2004) (Arnold, J., dissenting).

### III.

Claims under Title VII, 42 U.S.C. § 1983, and the Arkansas Civil Rights Act are analyzed using the same standards. *Wright v. Rolette County*, 417 F.3d 879, 884-85 (8th Cir. 2005); *Island v. Buena Vista Resort*, 352 Ark. 548, 556-57, 103 S.W.3d 671, 675 (2003); *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 571, 11 S.W.3d 531, 537 (2000). A plaintiff may establish intentional discrimination through either direct or indirect evidence. *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 933 (8th Cir. 2006). The Eighth Circuit has defined direct evidence as "'evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude . . . sufficient to permit the factfinder to infer that that attitude was more likely than not a motivating factor in the employer's decision.'" *Cronquist v. City of Minneapolis*, 237 F.3d 920, 925 (8th Cir. 2001) (quoting *Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 449 (8th Cir. 1993)). Tabb states in her response to the defendants' motion for summary judgment that she has shown her employers' discriminatory intent through direct evidence, but none of the affidavits or deposition testimony upon which she relies points to any statements that "directly reflect" such a discriminatory attitude. When a plaintiff lacks direct evidence of discrimination, she "must carry the initial burden under the statute of establishing a prima facie case of . . . discrimination." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973); *Flentje*, 340 Ark. at 571, 11 S.W.3d at 537. To establish a prima facie case of discrimination, a plaintiff must show that: (1) she is within a protected class; (2) she met her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4)

9

similarly situated employees who were not members of the protected class were treated differently. *Twymon*, 462 F.3d at 934; *Ottman v. City of Independence, Mo.*, 341 F.3d 751, 756 (8th Cir. 2003); *Roxas v. Presentation College*, 90 F.3d 310, 315 (8th Cir. 1996).

A.   **VEHICLE ASSIGNMENT**

The defendants concede that Tabb is a member of a protected group and that she is meeting legitimate expectations of her employer. However, they dispute that she suffered an adverse employment action and that she can identify similarly situated non-protected employees who were treated differently than she was. At the prima facie stage, a plaintiff's burden to show she was similarly situated to non-protected employees who were treated differently is not onerous. *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 852 (8th Cir. 2005). Starting in the 2001-2002 school year, there was always at least one white male serving as head teacher or principal at a school who was assigned a car while Tabb was not assigned one until 2006-2007.[2] At this stage, we will assume that she has met the burden of showing that there were similarly situated, non-protected employees who were being treated differently.

"'[An] adverse employment action must be one that produces a material employment disadvantage.'" *Devin v. Schwan's Home Serv., Inc.*, 491 F.3d 778, 789 (8th Cir. 2007) (quoting *Kerns v. Capital Graphics, Inc.*, 178 F.3d 1011, 1016 (8th Cir. 1999)). Termination, cuts in pay or benefits, changes that affect an employee's future career prospects, and circumstances amounting to constructive discharge are all significant enough to meet this standard. *Id.* "Although actions short of termination may constitute adverse actions . . . not everything that makes an employee

---

[2] In the first year, 1999-2000, cars were only assigned to the black male principal of East Arkansas and the white female principal of Grimes. There is no data for 2000-2001.

unhappy is an actionable adverse action." *Id.* In *Enowmbitang v. Seagate Technology, Inc.*, 148 F.3d 970 (8th Cir. 1998), the Eighth Circuit said that an employer's failure to provide an employee a computer "does not rise above a 'mere inconvenience' and therefore does not constitute an adverse employment action." *Id.* at 973; *cf. Turner v. Ashcroft*, No.01-1407, 2004 WL 2092011, at *6 (D. Minn. Sept. 17, 2004). For purposes of ruling on the motion for summary judgment, we will assume that denial of a car is an adverse employment action.

Assuming that Tabb has established a prima facie case of discrimination, the burden shifts to the employer "to articulate a legitimate, non-discriminatory reason" for the decision. *Twymon*, 462 F.3d at 934-35. Here, the defendants have offered a legitimate, nondiscriminatory reason to explain why Tabb was not assigned a vehicle until 2006. They say that they take three factors into consideration when assigning vehicles: the distance of the school from the central office in Pine Bluff, the size of the school, and the amount of use the vehicle would receive at the school, and the schools which were assigned vehicles met those criteria. The defendants have met their burden. *See Arraleh v. County of Ramsey*, 461 F.3d 967, 975 (8th Cir. 2006) ("[The burden to articulate a legitimate, nondiscriminatory reason] is not onerous, nor does the explanation need to be demonstrated by a preponderance of the evidence.").

Once the employer makes such a showing, the plaintiff must show that the employer's rationale was merely pretext for discrimination. *Id.* at 975-76. This requires the plaintiff to present evidence sufficient to support two findings: first, that there is a fact issue as to whether the employer's justification is mere pretext; and second, that the adverse employment decision was an act of intentional discrimination. *McCullough v. Real Foods, Inc.*, 140 F.3d 1123, 1127 (8th Cir. 1998); *see also Turner v. Honeywell Fed. Mfg. & Techs., LLC*, 336 F.3d 716, 723-24 (8th Cir. 2003)

(granting summary judgment when plaintiff failed to produce "any material evidence affirmatively demonstrating that [his employer's] justification was false and that it unlawfully discriminated against him on the basis of race"). To challenge the defendants' justification for their vehicle assignment policy, Tabb says that they should look at her activities, such as committee assignments and her work as a GED examiner, compared to other individuals who had been assigned vehicles. She does not provide any facts to dispute the distances of the schools from the central office or the size of the schools. She likewise does not provide any evidence other than her own assertions in affidavits and her deposition that the decision not to assign her a car until 2006 was an act of invidious discrimination. Generic statements made in affidavits or deposition testimony "'are insufficient to withstand a properly-supported motion for summary judgment.'" *Luciano v. Monfort, Inc.*, 259 F.3d 906, 910 (8th Cir. 2001) (quoting *Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 616 (8th Cir. 1997)). The undisputed facts show that vehicles have been assigned to schools the principals of which were white and black, male and female; and, conversely, schools have been denied vehicles when headed by principals who were white and black, male and female. There is no evidence of discrimination in the assignment of vehicles based on race or sex. There is no genuine issue of material fact as to Tabb's claim for discrimination based on race or gender related to the assignment of state-owned vehicles and the defendants are entitled to summary judgment.

### B.    MILEAGE REIMBURSEMENT

Again, the defendants concede that Tabb is a member of a protected group and that she is meeting legitimate expectations of her employer; however, they dispute that there were similarly situated non-protected employees who were treated differently with respect to mileage reimbursement and that the alleged denial of mileage reimbursements is not an adverse employment

action. Tabb says that Allen told her that she would not be reimbursed for travel when she drove her car from her home in Monticello or from the Delta unit in Dermott and that after she filed a mileage reimbursement form in March 2006 that Rinchuso told her not to file another claim. It is undisputed that she was not fully reimbursed for one of her two claims, while Carol Santucci, a white female principal at Grimes, testified in her deposition that she was reimbursed for mileage on two occasions when she did not have a state-owned vehicle to use. Because the plaintiff's burden to show she was similarly situated to non-protected employees who were treated differently is not onerous at this stage, *Rodgers*, 417 F.3d at 852, Tabb has shown that a similarly situated non-protected employee was treated differently.

The defendants contend that the alleged denial of reimbursement for mileage is not actionable because it is not an adverse employment action. As it was previously stated, an adverse employment action must be one that produces a material employment disadvantage, *Devin*, 491 F.3d at 789, and an action that is only a "mere inconvenience" does not rise to the level of an adverse employment action. *Enowmbitang*, 148 F.3d at 973; *cf. Ashcroft*, 2004 WL 2092011, at *6 (stating that reduced mileage reimbursement was not an adverse employment action). Again, we will assume for purposes of ruling on summary judgment that denial of mileage reimbursement is an adverse employment action.

Assuming that Tabb has established a prima facie case, the defendants assert that they have a legitimate business reason that accounts for the fact that Tabb was only reimbursed twice while working in the school district. It is undisputed that the travel reimbursement policy provides for reimbursement when an employee travels "at the request of [a supervisor], or has received prior approval for" it and that Tabb has only filed two mileage reimbursement requests, for neither of

which she had prior approval. Tabb's first request was paid, but only partially, which Rinchuso says was a mistake because he was trying to follow a rule that would not allow employees to make money from travel. Tabb's second request was fully paid. The policy and the mistake about the first mileage claim provide legitimate and nondiscriminatory explanations of the mileage reimbursement system and Tabb's requests. Therefore, the burden shifts to Tabb to show that those reasons are pretextual and that there was an intentional act of discrimination based on race or sex. The only evidence Tabb offers is her assertion that Rinchuso told her "you better not file another mileage claim" after she submitted her first reimbursement form in March. The statement, itself, says nothing about race or sex, so that statement, alone, is not evidence of discrimination based on race or sex. Tabb cannot meet her burden of showing an intentional act of discrimination based on race or sex with respect to the mileage reimbursement requests, so the defendants are entitled to summary judgment.

## C.     FAILURE TO PROMOTE

To establish a prima facie case of discrimination based on a failure to promote, a plaintiff must show that she is a member of a protected class, that she sought and was denied a promotion for which she was qualified, and that the promotion was given to a person who is not a member of the protected class. *Honeywell*, 336 F.3d at 720. Tabb is a member of the protected class, and with respect to each of the positions she identifies (supervising principal, assistant superintendent, and superintendent), a member of a non-protected class was promoted. It is disputed whether she sought and was denied a promotion for which she was qualified.

The Eighth Circuit does not require a formal application as part of the prima facie case of a failure-to-promote claim if the plaintiff shows that the position was not officially advertised and

either that the plaintiff did not know about the job until it was filled or that the employer was aware of the plaintiff's interest in the job. *Gentry v. Georgia-Pacific Corp.*, 250 F.3d 646, 650 (8th Cir. 2001). It is undisputed that Tabb had not made Allen or Byers aware of her interest in a promotion. Neither party specifically states whether Tabb knew about the job until it was filled. In her complaint, Tabb says that Allen created each of the positions of supervising principal, assistant superintendent, and superintendent and then "hand-picked" Glover to fill them. Viewing the facts in favor of Tabb, the Court will assume that she did not know about the position until after it was filled by Glover. At the prima facie stage, the plaintiff simply needs to show that she was minimally qualified for the promotion. *Turner*, 336 F.3d at 721. The defendants do not contend that Tabb lacked the minimal qualifications for the promotion. Therefore, Tabb has met her burden of establishing a prima facie case of failure to promote.

If a plaintiff establishes a prima facie case of discrimination, a rebuttable presumption of discrimination arises. *Id*. at 723. The burden of production then shifts to the defendant to present evidence of a legitimate, nondiscriminatory reason for its action. *Id*. Allen testified that it has been his practice, when he has an exceptionally well qualified person on his staff to fill an open position, to promote that person without advertising the position. He testified that Tabb was promoted to principal in that manner, just as Glover was promoted to supervising principal and then to assistant superintendent. That is a legitimate, nondiscriminatory reason.

Thus, the burden shifts back to Tabb to "present evidence of discrimination sufficient to create a question for the jury." *Id*. Tabb cannot meet that burden. It is undisputed that Glover had 30 years of experience, whereas she had 16 years; and he had a doctorate in education, whereas she

did not. It is also undisputed that Tabb was promoted to principal in the same manner in which Glover was promoted.

Tabb argues that, since an equal employment opportunity policy was established in 2001, Allen violated that policy by promoting Glover in 2005 without advertising the open position. "An employer's failure to follow its own policies may support an inference of pretext." *Floyd v. State of Missouri Dep't of Soc. Servs.*, 188 F.3d 932, 937 (8th Cir. 1999). Assuming that Allen in fact deviated from the policy,[3] Tabb does not offer any evidence that Allen's deviation from the policy was based on racial discrimination. *See id.*; *see also Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 916 (8th Cir. 2007).

Tabb cannot show that Allen's stated reasons were pretexts for discrimination against her. Glover was substantially more qualified than Tabb both in education and experience. No reasonable juror could find that but for discrimination based on race or sex Tabb, instead of Glover, would have been promoted. She cannot present evidence of discrimination sufficient to create a question for the jury. Therefore, the defendants are entitled to summary judgment on Tabb's failure to promote claim.

## CONCLUSION

For the reasons listed above, Charles Allen, William Byers, and Eddie Rinchuso, as individuals and in their official capacities; and Drew Baker, Mary Parker, Benny Magness, Leroy Brownlee, Bill Ferren, Alonzo Jiles, and Kelly Pace, as members of the Arkansas Department of Correction School Board, are entitled to judgment as a matter of law.

---

[3] The policy does not explicitly say that all opportunities for promotion must be posted, but Allen seemed to conceded in his deposition that his failure to post the position was a violation of the policy. He did not know when the policy went into effect.

IT IS SO ORDERED this 4th day of February, 2009.

                                                                                 _____
                                                                                 J. LEON HOLMES
                                                                                 UNITED STATES DISTRICT JUDGE